# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **JOHN WESLEY BURCH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-11-S-3770-NW** |
| | ) | |
| **JEREMY KEITH BAKER,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, John Wesley Burch, commenced this action on October 28, 2011. His *pro se* complaint was 32 pages long, and named five defendants: Jeremy Keith Baker, an Alabama State Trooper; Angie Hamilton, an Assistant District Attorney for Lauderdale County, Alabama; Ronald Lansdell, an investigator employed by the Lauderdale County District Attorney; the City of Florence, Alabama; and Luke McIntyre, an officer of the Florence, Alabama police force. Plaintiff's claims arose from an allegedly unlawful arrest that occurred on October 28, 2009.[1]

Before serving any of those defendants with process and copies of his original complaint, however, plaintiff filed an amended complaint on November 17, 2011. That pleading was 79 pages long — more than twice the length of the original.[2]

---

[1] Doc. no. 1 ¶¶ 3-7.

[2] Doc. no. 3.

Defendants Angie Hamilton and Ronnie Lansdell jointly filed a motion for more definite statement pursuant to Federal Rule of Civil Procedure Rule 12(e) on January 17, 2012.[3]  Defendant Jeremy Keith Baker filed a similar motion two days later.[4]  Hamilton, Lansdell, and Baker argued that plaintiff's amended complaint was deficient for several reasons:  *e.g.*, it was a "shotgun" pleading; it was excessively long; several of the numbered paragraphs contained multiple statements of fact, rather than a single discrete fact; several of the paragraphs were misnumbered; the complaint contained speculation and legal conclusions, rather than statements of fact; and the complaint failed to divide plaintiff's claims into discrete counts.[5]  All three defendants requested that plaintiff be ordered to file an amended complaint that complied with the Federal Rules of Civil Procedure.  The motion jointly filed by Hamilton and Lansdell additionally requested that the amended complaint be limited to ten pages in length.[6]  Plaintiff was ordered — not just once, but twice — to file his responses to those motions by February 3, 2012,[7] but he failed to do so.

---

[3] Doc. no. 7.

[4] Doc. no. 10.

[5] *See generally* doc. no. 8 (Brief in Support of Motion for More Definite Statement of Lansdell and Hamilton), doc. no. 11 (Brief in Support of Motion for More Definite Statement of Baker).

[6] Doc. no. 8, at 7.

[7] Doc. no. 9 (Jan. 18, 2012 Order to Respond To Hamilton and Lansdell motion); doc. no. 12 (Jan. 19, 2012 Order to Respond to Baker motion).

2

The City of Florence, Alabama, filed a motion to dismiss on February 2, 2012, based upon Federal Rule of Civil Procedure Rule 12(b)(6).  The City argued that the complaint contained no factual allegations regarding the City as an entity, and that the statute of limitations had expired.[8]  On the same day, defendant Luke McIntyre filed a motion for a more definite statement, raising the same arguments stated in the motions previously filed by the other individual defendants.[9]  McIntyre requested that plaintiff be ordered to replead his complaint, and that the new complaint be limited to twenty pages.[10]  McIntyre and the City of Florence also jointly filed a motion to stay discovery and suspend their obligation under Federal Rule of Civil Procedure 26, pending disposition of the motions to dismiss and for more definite statement.[11]  The court ordered plaintiff to respond to those motions by February 17, 2012.[12]

Plaintiff did not strictly respond to any of the pending motions.  Instead, on February 9, 2012, he filed a motion for leave to submit a "consolidated response."  Plaintiff stated that he "would be prejudiced by filing a response that addressed *only* the issues and concerns aired in any one or multiple Defendant's motion [sic] for

---

[8] Doc. no. 13.  As discussed below, the City was dismissed from the case after plaintiff filed his second amended complaint that did not include the City as a defendant. *See* doc. no. 39 (Order entered Apr. 16, 2012).

[9] Doc. no. 15.

[10] *Id.* ¶ 7.

[11] Doc. no. 16.

[12] Doc. no. 17 (Order to Respond).

more definite statement without *also addressing* the issues and concerns raised *in all* such filed motions"; therefore, he requested leave "to file a *single* more definite statement that will function as a consolidated Response to Respective Defendant's Motions for More Definite Statement . . . ."[13]  Plaintiff requested the same filing deadline already in place for his responses to the motions of the City and McIntyre: *i.e.*, February 17, 2012.[14]  This court granted plaintiff's motion.[15]

Thus, plaintiff filed a *second* amended complaint on February 17, 2012.[16]  That pleading removed the City of Florence as a defendant — thus ending its involvement in this case[17] — but added another defendant:  Kenneth Rager, a digital forensics investigator employed by the Alabama Department of Revenue.[18]  The second amended complaint is *159 pages long*, exclusive of exhibits.[19]  It contains *424 numbered paragraphs*, twenty-four footnotes, and seven counts.[20]

In response to plaintiff's second amended complaint, defendants McIntyre, Hamilton and Lansdell jointly, and Baker filed on March 2, 2012 motions to dismiss

---

[13] Doc. no. 18, at 2 (emphasis in original).

[14] *Id.*

[15] Doc. no. 19 (Order Granting Motion for Leave to File Consolidated Response).

[16] Doc. no. 20 (Second Amended Complaint).

[17] *See* doc. no. 39 (Order entered Apr. 16, 2012), at 2 (dismissing City from the case).

[18] *See id.* ¶ 7.

[19] *See generally id.*

[20] *See generally id.*

this action pursuant to Federal Rule of Civil Procedure 41(b).[21]  Plaintiff timely responded to those motions on March 20, 2012.[22]

Kenneth Rager, the new defendant named in the second amended complaint, was served on March 16, 2012.[23]  After obtaining an extension of time to answer, Rager filed his own motion for a more definite statement on April 12, 2012.[24]  That motion differs from the motions for a more definite statement filed by the other defendants, in that Rager's motion addresses plaintiff's *second* — rather than his *first* — amended complaint.  Rager subsequently filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 41(b).[25]  Plaintiff has not responded to either of Rager's motions.

## I.  LEGAL STANDARDS

### A.    Federal Rule of Civil Procedure 41(b)

According to Federal Rule of Civil Procedure 41, when a plaintiff "fails to prosecute or comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."  Fed. R. Civ. P. 41(b).  The power to

---

[21] *See* doc. no. 22 (Motion to Dismiss by Luke McIntyre); doc. no. 23 (Motion to Dismiss by Jeremy Keith Baker); doc. no. 26 (Motion to Dismiss by Angie Hamilton and Ronald Lansdell).

[22] Doc. no. 32 (Plaintiff's Response to McIntyre's Motion to Dismiss); doc. no. 33 (Plaintiff's Joint Response to Motions to Dismiss by Baker, Hamilton, and Lansdell).

[23] Doc. no. 34 (Executed Summons).

[24] Doc. no. 37 (Motion for More Definite Statement by Kenneth Rager).

[25] Doc. no. 46 (Motion to Dismiss by Kenneth Rager).

dismiss under Rule 41(b) is discretionary. Even so, the district court's discretion is tempered by the requirement that there be "a clear record of 'willful' contempt and an implicit or explicit finding that lesser sanctions would not suffice." *Gratton v. Great American Communications*, 178 F.3d 1373, 1374 (11th Cir. 1999); *see also*, *e.g.*, *Reed v. Fulton County Government*, 170 F. App'x 674, 675-76 (11th Cir. 2006) (same); *Beckwith v. Bellsouth Telecommunications Inc.*, 146 F. App'x 368, 372 (11th Cir. 2005) (*per curiam*) ("Because dismissal with prejudice is a drastic sanction, a district court may impose it only as a last resort, when: (1) the failure to comply with a court order [or the federal rules] is a result of willfulness or bad faith, and (2) the district court specifically finds that lesser sanctions will not suffice.") (alteration supplied, internal citations omitted).

## B.    "Shotgun" Pleadings and Rules 8(a)(2), 8(d)(1), 10(b), and 12(e)

The Eleventh Circuit has frequently condemned so-called "shotgun pleadings." *See*, *e.g.*, *Chapman v. AI Transport*, 229 F.3d 1012, 1027 (11th Cir. 2000) (*en banc*) (citing *Morro v. City of Birmingham*, 117 F.3d 508, 515 (11th Cir. 1997). "A shotgun pleading is a pleading that incorporates every antecedent allegation by reference into each subsequent claim for relief or affirmative defense." *Wagner v. First Horizon Pharmacy Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006); *see also*, *e.g.*, *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th

6

Cir. 2002); *McMahon v. Cleveland Clinic Foundation Police Department*, 455 F. App'x 874, 877 (11th Cir. 2011) (*per curiam*).

Shotgun pleadings implicate (and typically violate) several of the Federal Rules of Civil Procedure. For instance, Rule 8(a)(2) requires a complaint to contain a "*short* and *plain* statement of the claim showing that the pleader is entitled to relief," and which gives the opposing party notice of the claim and its grounds. Fed. R. Civ. P. 8(a)(2) (emphasis supplied); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 8(d) states that "[e]ach allegation [in a pleading] must be *simple*, *concise*, and *direct*." Fed. R. Civ. P. 8(d)(1) (alterations and emphasis supplied). Yet, there is nothing "short and plain," or "simple, concise, and direct," about a shotgun pleading. If left undisturbed, such a pleading forces a court to "sift through the facts presented and decide for [itself] which were material to the particular cause of action asserted." *Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991) (alteration supplied). Federal Rule of Civil Procedure 10 also provides that:

> A party must state its claims or defenses in numbered paragraphs, *each limited as far as practicable to a single set of circumstances*. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, *each claim founded on a separate transaction or occurrence* — and each defense other than a denial — *must be stated in a separate count or defense*.

Fed. R. Civ. P. 10(b) (emphasis supplied).  By definition, then, a shotgun pleading "completely disregards Rule 10(b)'s requirement that discrete claims should be plead in separate counts."  *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (citing *Anderson v. District Board of Trustees of Central Florida Community College*, 77 F.3d 364, 366-67 (11th Cir. 1996)).

When a complaint takes the form of a "shotgun pleading," the defendant is not required to submit a responsive pleading.  *See Anderson*, 77 F.3d at 366. Instead, the defendant is encouraged — in fact, expected — to move for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e).[26]  *Id.*  If the defendant does not take matters into his own hands, the court should address the issue *sua sponte*.  *See Magluta*, 256 F.3d at 1284-85 (noting that, when faced with a shotgun complaint, the court should strike the complaint and require plaintiff to replead in accordance with Rule 8); *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1354 n.6 (11th Cir. 2006); *Byrne v. Nezhat*, 261 F.3d 1075, 1133 (11th Cir. 2001).

---

[26] The referenced Rule provides that:

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

Fed. R. Civ. P. 12(e).

## II. DISCUSSION

The original motions for a more definite statement filed by Baker, Hamilton and Lansdell jointly, and McIntyre individually are due to be denied as moot.[27]  Those motions addressed plaintiff's *first* amended complaint, which has since been superceded by his *second* amended complaint.

Plaintiff's second amended complaint is a classic "shotgun complaint" that contravenes Federal Rules of Civil Procedure 8 and 10.  The first paragraph within each numbered count realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of the complaint.[28]  The complaint does not offer a "short and plain" statement of plaintiff's claims, and its allegations are not "simple, concise, and direct."  Fed. R. Civ. P. 8(a)(2), 8(d)(1).  This court need not wade through the entirety of the *159-page*, *424-paragraph* pleading in order to extensively catalog how it violates Rule 8.[29]  Instead, the following extracts will serve to illustrate the complaint's typically verbose and convoluted nature.

---

[27]  *See* doc. no. 7 (Motion for More Definite Statement by Angie Hamilton and Ronald Lansdell); doc. no. 10 (Motion for More Definite Statement by Jeremy Keith Baker); doc. no. 15 (Motion for More Definite Statement by Luke McIntyre).

[28] Doc. no. 20-1 (Second Amended Complaint) ¶¶ 355, 363, 382, 391, 406, 411, 417.

[29] Plaintiff contends that the length of a complaint is not sufficient, by itself, to render a complaint improper.  *See* doc. no. 32 (Response to McIntyre's Motion to Dismiss) ¶ 4.  But at minimum, the length of a complaint is certainly a factor to be considered.  Combined with its other flaws, the court easily concludes that the second amended complaint does not meet the standards set forth in the Federal Rules of Civil Procedure.

240.  Had Hamilton actually believed that probable cause existed to believe that Plaintiff had committed the offense [sic] of stalking offense as she advised Trooper Baker on seizing Plaintiffs property on October 28, 2009, and then helped him draft the affidavit for search warrant as to the stalking offense later that evening, and had Hamilton actually believed that probable cause existed as to the same search warrant as to the stalking offense, *this time additionally bolstered by the fabricated "smoking gun" images allegedly taken of Trooper Baker or his car prior to the stop on October 28, 2009, and additionally bolstered by the addition to her fraudulent presentation of Plaintiffs alleged verbally communicated physical threat in the form of the notepad and its transcribed writing of parts or all of the October 28, 2009 cellular phone conversation between Plaintiff and Lansdell*, then Hamilton, upon the district court's supreme graciously finding as to probable cause as to the stalking offense would have had no reason not to have sought an indictment.

241.  Had Hamilton sought an indictment, however, consistent with her hard fought claims as to existence of probable cause as to the stalking offense, she would have surely been familiar with the "smoking gun" photographic evidence of Trooper Baker that she had reported in the face of the Plaintiffs [sic] denials at the November 12, 2009 *hearing as Trooper Baker was the only individual described in the affidavit in support of search warrant who* — between Defendant Baker's own fabricated claim of Plaintiffs [sic] August 7, 2009 photography of he and his nephew at a Pure Gas Station in Killen, Alabama at 3:30 pm and Hamilton's complementary bolstering in the form of the fabricated claim of evidence of Plaintiffs pre-arrest photographic stalking of Trooper Baker on October 28, 2009 — *would have met the Alabama's stalking statute's requirement that the victim be repeatedly followed*.

242.  In addition, as there was absolutely no proof whatsoever that any of the photographs alleged in the affidavit had ever, in fact, been taken, the stalking photograph(s) that Hamilton had alleged that Plaintiff had taken of Trooper Baker and/or his patrol vehicle prior to the October 28, 2009 stop would have been the only supporting photographic evidence that Hamilton would have had available to present to the grand

jury. Even if Hamilton had somehow decided not to present such photographs to a grand jury, there is no reasonable or rational theory that Hamilton had sought an indictment on the stalking offense and not been have become aware of the fact that the photographs that she had claimed existed were nowhere to be seen.

243. Hamilton's superficially nonchalant admission that she had never seen the photographs of Plaintiff stalking Trooper Baker and/or his patrol car on October 28, 2009 — the same photographs she emphatically claimed existed against Plaintiff' [sic] denials on November 12, 2009 and that Hamilton should have been very interested in analyzing given the potential danger that these photographs suggested Trooper Baker and his family were in — coupled with her still-stated belief that investigator Rager had, in fact, identified the photographs of Trooper Baker that she had claimed revealed Plaintiff's October 28, 2009 pre-stop staling of Baker, is quite telling.

244. Because these photographs that Plaintiff had, through his denials as to having taken such photographs, ostensibly perjured himself over, and that would tend to suggest that Trooper Baker and his family were being stalked by Plaintiff, were centrally relevant to Hamilton's supposed interest in prosecuting the Plaintiff for stalking, Hamilton's casual admission that she had never seen these photographs, but accompanying profession in a belief as to their existence, is only rationally explained **by Hamilton's actual knowledge that the photographs that she ordered Rager to fraudulently document in an evidentiary report never, in fact, existed**, thus explaining her lack of concern as to where the photographs bearing on Baker's safety were located, an individual who she knew was never being stalked, followed, or photographed by Plaintiff.[30]

Plaintiff's second amended complaint also violates Rule 10(b). For instance, with the sole exception of Count II, all remaining counts of the seven-count pleading

---

[30] Doc. no. 20-1(Second Amended Complaint) ¶¶ 240-244 (all emphasis in original).

state claims against *multiple* defendants.[31]   Moreover, many of the individually numbered counts contain *multiple* legal claims for relief.  Thus, for example, Count IV alleges "[v]iolations of 42 U.S.C. § 1983 [for] First Amendment Retaliation, False Arrest and Imprisonment, Illegal Search and Seizure, Malicious Prosecution, Selective Prosecution, Abuse of Process, Law Enforcement Retaliatory Conduct," while Count V alleges "[v]iolations of State Law [for] False Arrest and Imprisonment, Malicious and Selective Prosecution/Equal Protection Claim; Abuse of Process; Outrage; False Light; Invasion Of Privacy; Intentional and Negligent Infliction of Emotional Distress."[32]

Such pleadings should not be permitted, as they place heavy burdens on the litigants, as well as the court.  *See Strategic Income Fund, L.L.C.,* 305 F.3d at 1296 nn.9-10 (noting the negative effects of shotgun pleadings); *Bryne*, 261 F.3d at 1129-32 (discussing the evils associated with shotgun complaints).

The issue that confronts this court is whether to dismiss the second amended complaint or require plaintiff to replead his claims.  Considerations that bear upon that decision exist not only in the present case, but also another action that previously was filed in this court and dismissed on December 17, 2012:  *i.e.*, *John Wesley Burch*

---

[31] *See id.* ¶¶ 355-424.

[32] *Id.* at 147 (Heading to Count IV), 151 (Heading to Count V).

12

*v. City of Florence, Alabama; Luke McIntyre; and Philip Moss*, Civil Action No. 10-s-2417-NW (hereafter, "the *City of Florence* case").

In the present case, none of plaintiff's *three* complaints have even closely approximated the requirements of Federal Rules of Civil Procedure 8 or 10.  After the opposing parties identified and catalogued the problems with his *first amended* complaint,[33] plaintiff indicated that he would "address the concerns raised in each of the various Defendant's [sic] motion[s]."[34]

Yet, his *second amended* complaint also failed to comply with the Rules; indeed, at 159 pages and 424 paragraphs, it is not rationally possible to argue reasonably that the document constitutes a "a short and plain statement of the [plaintiff's] claim[s] showing that the pleader is entitled to relief," or that each allegation is "simple, concise, and direct."  Fed. R. Civ. P. 8(a)(2), (d)(1) (alterations supplied).  Additionally, plaintiff refused to comply with this court's two orders directing him to respond to the defendants' motions for a more definite statement by February 3, 2012.[35]

---

[33] *E.g.,* doc. no. 8 (Brief in Support of Motion for More Definite Statement by Hamilton and Lansdell), at 2-7; doc. no. 11 (Brief in Support of Motion for More Definite Statement by Jeremy Baker), at 5-10; doc. no. 15 (Motion for More Definite Statement by Luke McIntryre), at 1-5; *see* doc. no. 22 (Motion to Dismiss by Luke McIntyre), at 9-10 ¶ 11.

[34] Doc. no. 18 (Motion for Leave to File Consolidated Responses), at 2.

[35] *See supra* note 7.

As noted previously, however, this is not the only case in which this court has battled to procure plaintiff's compliance with either the Federal Rules of Civil Procedure or this court's orders.  The *City of Florence* case illustrates the difficulties encountered when indulging plaintiff.   In the memorandum opinion granting summary judgment in favor of the defendants in that action, this court listed examples of plaintiff's disregard for court-ordered deadlines and procedures.  As illustrated in the following extracts from pages 3 through 9 of that opinion, plaintiff's transgressions included:   failure to timely provide initial disclosures; failure to comply with the court's order to respond to a motion to compel; delaying the scheduling of his deposition for over six months; repeatedly requesting "emergency" filing arrangements, after the normal closing hours for the Clerk of Court; filing a repetitious motion to consolidate after the plaintiff's motion for joinder had been denied; multiple failures to timely respond to a motion for summary judgment; filing documents in the wrong judicial district; and repeated violations of court-ordered briefing requirements.[36]  This court began the *City of Florence* opinion by observing that:

> Plaintiff did not submit any evidence, or a brief, in opposition to defendants' motions for summary judgment.  In fact, plaintiff has a

---

[36] *Burch v. City of Florence*, No. CV-10-S-2417-NW, slip op. at 3-12 (N.D. Ala. Dec. 17, 2010)

history of missing court-ordered deadlines and disregarding the court's procedures throughout this litigation. For example, on August 17, 2011, the court granted defendants' motion to compel discovery and ordered plaintiff to serve defendants with his initial disclosures and responses to all of defendants' written discovery requests. Plaintiff had failed to comply with the court's order to respond to defendants' motion to compel, and had instead attempted to provide discovery responses to defendants' attorney via electronic mail. Plaintiff was advised that he would be required to strictly comply with the court's orders in the future, and that communicating with opposing counsel was not sufficient to comply with his duty to respond to a court order.

On December 2, 2011, after approximately six months of unsuccessfully attempting to schedule plaintiff's deposition and otherwise obtain discovery from him, defendants filed a motion to dismiss plaintiff's claims for failure to prosecute. Plaintiff was ordered to show cause why defendants' motion should not be granted; and, while he filed two separate responses to the show cause order, he never explained his failures to meaningfully engage in the discovery process, but instead filed more than sixty pages of argument on the merits of his claims. Affording plaintiff leeway because of his *pro se* status, this court denied defendants' motion to dismiss on January 6, 2012, and advised plaintiff that it would expect his future compliance with court orders and the requirements of the Federal Rules of Civil Procedure, despite his *pro se* status. The court extended the discovery deadlines in order to provide plaintiff yet another opportunity to comply with his discovery obligations, and cautioned plaintiff that if he did not appear for deposition at a time and place of defendants' choosing by February 6, 2012, his case would be dismissed without further notice.

Plaintiff later sought a further extension of the discovery deadlines, which the court granted, but advised plaintiff that it would be his *final* extension. The court also noted that plaintiff had developed an unnecessary habit of requesting the Clerk of Court to make emergency arrangements to accept his filings after hours, and informed plaintiff that all future filings must be received by the Clerk no later than 4:30 o'clock p.m. The court also stated:

> If plaintiff makes any future special requests for late filings, he will be required to submit with the filing a detailed, sworn statement of the nature of his alleged emergency.  If the court deems plaintiff's statement to be insufficient, plaintiff may be subject to sanctions, including having his pleading stricken from the record, for abuse of the court's procedures.  Forgetting a deadline or other lack of diligence will not be an acceptable excuse.  Even though plaintiff is proceeding *pro se*, he still must be expected to comply with basic court rules and procedures.

On May 25, 2012, plaintiff filed *304 pages* of briefing and evidence in support of a motion for joinder of this case with another lawsuit he filed in this district.  As plaintiff's motion for joinder essentially was a repetition of his previous motion to consolidate, it was denied.  In the order denying the motion for joinder, the court noted that plaintiff had devoted the overwhelming majority of his voluminous brief to a superfluous discussion of the merits of his claims.  In order to prevent any future waste of the court's (and plaintiff's) time, plaintiff was cautioned that he should not argue the underlying merits of his case in every filing, and that any future briefs filed in support of or in opposition to a motion should address only the limited issues implicated by such motions.  The court also mandated that all future briefs by *either* party should not exceed 40 pages of double-spaced, fourteen-point (or larger) type, unless advance permission had been granted, and advised that any non-compliant briefs would be stricken.

Defendants filed their motions for summary judgment on June 11, 2012.  The court entered two separate orders that same day, requiring plaintiff to respond to both motions by July 3, 2012, and reminding him that his responses must comply with the requirements of the Appendix to the Uniform Initial Order.  Plaintiff did not respond to either motion for summary judgment before July 3.  Instead, the Clerk's Office notes indicate that plaintiff telephoned that office at approximately 4:15 o'clock p.m. on July 2, to inquire who would be serving as the "after hours clerk" that day.  He also advised the Clerk's Office staff that he would be in Huntsville to file a pleading at approximately 5:15 or 5:30

o'clock p.m. that day.  Plaintiff did not arrive in Huntsville by 5:30 on July 2 to file his pleading.  Instead, he placed it in the overnight drop box at the Clerk's Office of the United States District Court for the *Middle District* of Alabama in *Montgomery,* Alabama.  The Middle District subsequently forwarded plaintiff's pleading, which was a motion for extension of time to respond to defendants' motions for summary judgment, and for leave to exceed the page limitation, to this court for filing, and it was accepted and placed on the docket of this case on July 5, 2012.  This court leniently granted plaintiff an extension until July 24 to respond to defendants' motions for summary judgment.  The court also allowed plaintiff thirty pages to respond to the motion filed by the City, and fifty pages to respond to the motion filed by McIntyre and Moss.  The court advised plaintiff that his briefs otherwise must strictly comply with the requirements of the Appendix to the Uniform Initial Order, and cautioned him that any non-compliant briefs would be stricken.  The court also ordered that all future filings by either party were required to be made by 4:30 o'clock p.m. on the day they were due, with no exceptions, and no provisions to be made for late or non-compliant filings.

Despite the court's clear directives, plaintiff did not file a response to either motion for summary judgment before July 24.  Indeed, the court heard nothing further from plaintiff until August 17, 2012, when he filed a "motion requesting leave to file out of time motion to strike with incorporated memorandum in excess of page limitation." The essence of plaintiff's motion was a request for this court to strike any affidavits from witnesses that had not previously been disclosed, and to strike any testimony about subject matters that had not previously been discussed.  Plaintiff's motion for leave was thirteen pages long, and the proposed motion to strike appended to the motion for leave was *ninety-two pages* in length, and was accompanied by an additional thirty-nine pages of exhibits.  As plaintiff's motion failed to comply with the court's previous directives, it was summarily denied on August 30, 2012. On September 21, 2012, plaintiff filed a "motion requesting leave to file out of time motion to strike with incorporated memorandum of law in excess of page limitation."  The motion to strike that plaintiff sought to file covered eighty-seven pages and asked the court to strike

17

defendants' "dashcam evidence," *i.e.,* the patrol car video recording of one of the primary incidents forming the basis of plaintiff's claims. The court summarily denied plaintiff's motion on September 26, 2012 — again, because it did not comply with the court's prior, repeated directives.

Plaintiff never filed, or attempted to file, any response to defendants' summary judgment motion that would have come even close to complying with the requirements of the Appendix to the Uniform Initial Order. . . .

*Burch v. City of Florence*, No. CV-10-S-2417-NW, slip op. at 3-9 (N.D. Ala. Dec. 17, 2010) (footnotes omitted).[37]

---

[37] With regard to the statement in the last paragraph of the quotation from the *City of Florence* opinion — *i.e.*, that plaintiff neither filed nor attempted to file a response to the defendants' motion for summary judgment that complied with the requirements of the Appendix to the this court's "Uniform Initial Order" — that Appendix contains the following requirements, among others:

**D.   Manner of Stating Facts**

All briefs submitted either in support of or opposition to a motion must begin with a statement of allegedly undisputed relevant material facts set out in *separately numbered paragraphs.*  Counsel must state facts in clear, unambiguous, simple, declarative sentences.  All statements of fact must be supported by specific reference to evidentiary submissions.

**1.     Moving Party's Initial Statement of Facts**

The moving party shall list in *separately numbered paragraphs* each material fact the movant contends is true and not in genuine dispute, and upon which the moving party relies to demonstrate that it is entitled to summary judgment.  Each such statement must be followed by a specific reference to those portions of the evidentiary record that the movant claims supports it.

**2.     Opposing Party's Statement of Facts**

Each party opposing a summary judgment motion also must submit a statement of facts divided as follows:

18

For such reasons, this court is sorely inclined to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 41(b).

Even so, the court is not convinced that the Eleventh Circuit would approve of basing such an extreme sanction on the plaintiff's derelictions in a separate case. Stated differently, the court suspects that the Circuit might decide that each case, like a pot, must sit upon its own bottom.  Consequently, the court finds that the better

### a.   Response to Movant's Statement

The first section must consist of only the non-moving party's disputes, if any, with the moving party's claimed undisputed facts.  The non-moving party's response to the moving party's claimed undisputed facts shall be in *separately numbered paragraphs* that coincide with those of the moving party's claimed undisputed facts. Any statements of fact that are disputed by the non-moving party must be followed by a specific reference to those portions of the evidentiary record upon which the dispute is based.  *All material facts set forth in the statement required of the moving party will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment.*

### b.   Additional Undisputed Facts

The second section may contain additional, allegedly undisputed facts set out in *separately numbered paragraphs* that the opposing party contends require the denial of summary judgment.  The second section of the opposing party's statement of facts, if any, shall be clearly designated as such.  The opposing party should include only facts which the opposing party contends are true and not in genuine dispute.

### c.   Additional Disputed Facts

The third section may contain additional, allegedly disputed facts set out in *separately numbered paragraphs* that the opposing party contends require the denial of summary judgment.  The third section of the opposing party's statement of facts, if any, shall be clearly designated as such.  Each statement of allegedly disputed facts must be followed by specific reference to those portions of the evidentiary record which both support and contradict the alleged fact.

19

course is to allow plaintiff *one last opportunity — and one only* — to comply with *both* the pleading requirements of the Federal Rules of Civil Procedure *and* the orders of this court.

Consequently, the motions to dismiss filed by defendants Luke McIntyre, Jeremy Keith Baker, Angie Hamilton, Ronald Lansdell, and Kenneth Rager are overruled,[38] but Kenneth Rager's motion for more definite statement is **GRANTED**;[39] and, it is **ORDERED** that plaintiff, John Wesley Burch, file a third amended complaint on or before **Wednesday**, **January 16, 2013**.  It is further **ORDERED** that such third amended complaint must fully comply with all of the following requirements, *without exception*:

1.  The complaint must not exceed **twenty (20) pages** of double-spaced, 14-point type.

2.  The complaint must comply with the pleading requirements of Federal Rules of Civil Procedure 8 and 10 discussed above.

3.  The complaint must be filed in the Clerk's office **in the United States Courthouse located at 101 Holmes Avenue, Huntsville, Alabama** 35801, not later than the close of business (*i.e.*, **4:30 o'clock p.m. Central Standard Time**) on Wednesday, January 16, 2013.

    a.  **No "emergency," after-hours filing will be permitted or accepted**;

---

[38] *See* doc. no. 22 (Motion to Dismiss by Luke McIntyre); doc. no. 23 (Motion to Dismiss by Jeremy Keith Baker); doc. no. 26 (Motion to Dismiss jointly filed by Angie Hamilton and Ronald Lansdell); and doc. no. 46 (Motion to Dismiss by Kenneth Rager).

[39] *See* doc. no. 37.

and, without question, no filings in the *Middle District of Alabama* as previously occurred in the *City of Florence* case will be sanctioned.

Any deviation from the foregoing requirements will subject plaintiff to the sanction of dismissal of all claims.

      **DONE** and **ORDERED** this 2nd day of January, 2012.

_____
United States District Judge

21